**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE QUAPAW TRIBE OF OKLAHOMA, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 03-CV-0846-CVE-PJC |
| BLUE TEE CORP., et al., | )<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is defendant Burlington Northern Sante Fe Railway Co.'s (BNSF) Motion for Judgment on the Pleadings (Dkt. # 573). BNSF asserts that the Quapaw Tribe of Oklahoma's (the Tribe) state law claims for natural resources damages (NRD) are preempted by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA). The Tribe responds that its NRD claims are limited to damages for the restoration, replacement, or acquisition of damaged natural resources, and its NRD claims are not preempted as a matter of law.

**I.**

Plaintiffs filed this lawsuit on December 10, 2003, alleging claims of public nuisance, private nuisance, trespass, unjust enrichment, strict liability, and deceit against the successor entities of mining companies that operated in the former Tri-State Mining District. Dkt. # 1. On May 5, 2004, plaintiffs filed their first amended complaint and the Tribe sought relief under CERCLA. Dkt. # 146. The Tribe requested damages for "1) the cost to restore, replace, or acquire the equivalent of such natural resources, 2) the compensable value of lost services resulting from the injury to natural resources, and 3) the reasonable cost of assessing injury to the natural resources and the resulting

damages." Id. at 77.  The case was stayed for almost two years while plaintiffs pursued an interlocutory appeal to the Tenth Circuit concerning tribal sovereign immunity from counterclaims of recoupment.

Following the Tenth Circuit's decision, plaintiffs requested leave to file a second amended complaint, inter alia, to conform their pleading to the rulings of the Tenth Circuit and this Court, to add the United States as a party to the Tribe's CERCLA claim, and to add BNSF as a defendant to plaintiffs' common law claims.  Dkt. # 320.  The Court granted plaintiffs' motion to amend.  In addition to the amendments noted above, plaintiffs also limited their claims for NRD to "all past and interim loss-of-use [NRD] on behalf of the Quapaw from the time of any hazardous substance release until restoration."  Dkt. # 330, at 50.  On June 1, 2007, plaintiffs filed their third amended complaint adding a CERCLA claim against BNSF and deleting any class action allegations from their prior pleadings.  Dkt. # 367.

Defendants asked the Court to bifurcate the case into two phases.  They asserted that liability should be addressed before assessing the amount of damages that plaintiffs could recover. The Court held a status conference on July 31, 2007, and addressed defendants' request to bifurcate the proceedings.  Dkt. # 412.  At the status conference, defendants also argued that the Tribe lacked standing to pursue NRD because the Tribe was not a trustee over many of the natural resources listed in the third amended complaint.  The Court determined that bifurcation was necessary, but not in the manner originally proposed by defendants.  The Court entered a scheduling order on issues related to the Tribe's claims for NRD and the Tribe's status as a trustee to assert claims for harm to natural resources within historic boundaries of the former Quapaw reservation.  Dkt. # 408.  The Court entered a separate scheduling order setting deadlines and a trial on any issues that remained

after the Court determined the Tribe's standing to assert its CERCLA and common law claims for NRD. Dkt. # 409.

The federal defendants, the United States of America and Dirk Kempthorne, in his capacity as Secretary of the Department of the Interior, filed a motion for judgment on the pleadings concerning the Tribe's CERCLA claim. They argued that the Tribe's CERCLA claim was premature, because the Environmental Protection Agency (EPA) had not completed its remedial work at the Tar Creek Superfund Site (Tar Creek). Plaintiffs filed a fourth amended complaint alleging that the EPA was not diligently proceeding with remedial work at Tar Creek and asserted that it could pursue a CERCLA claim before the EPA's remedial work was completed. Dkt. # 449. After permitting the Tribe and the federal defendants to file cross-motions for summary judgment on the issue of the EPA's diligence at Tar Creek, the Court granted the federal defendants' motion for judgment on the pleadings. Dkt. # 560. The Court found that the Tribe's CERCLA claim was barred by 42 U.S.C. § 9613(g), which prohibits a trustee from pursuing a CERCLA claim for NRD until the EPA has selected a final remedy for a Superfund site. While noting that past and interim loss of use damages are available under CERCLA, the Court held that NRD damages are residual and a claim for such damages may not ordinarily be filed while the EPA is actively removing hazardous waste. In its response to the federal defendants' motion for judgment on the pleadings, the Tribe relied heavily on New Mexico v. General Electric Co., 467 F.3d 1223 (10th Cir. 2006), which discussed CERCLA's preemptive effect on state law claims for NRD, and the Court analyzed New Mexico's application to the Tribe's CERCLA claim. While the Court's opinion and order dealt with the timing of the Tribe's CERCLA claim, the Court noted that New Mexico would "impact the availability of NRD" under Oklahoma law. Dkt. # 560, at 21 n.10.

Plaintiffs filed their fifth amended complaint on October 3, 2008 substantially revising their claims for NRD under Oklahoma law. The Tribe deleted its CERCLA claim to conform with the Court's opinion and order, but continued to seek NRD under Oklahoma law. The Tribe requests compensation for "past loss-of-use of natural resources within the Quapaw Reservation on restricted lands of the members of the Tribe, on lands held in trust for the Tribe, and on lands owned in fee simply by the Tribe from the time of any and all hazardous substance releases until July 7, 2008." Dkt. # 570, at 38. However, the Tribe differentiates between damages arising before December 10, 1980[1] and damages occurring between December 11, 1980 and July 7, 2008.[2] The fifth amended complaint requests:

> compensatory damages for all past loss-of-use natural resource damages from the time of any hazardous substance release until December 10, 1980, with such judgment ordering that upon collection all awarded compensatory damages shall thereafter be placed in a court-supervised trust with the Quapaw Tribe acting as trustee, and after payment of attorneys' fees and litigation costs reasonably incurred in this litigation, such sums shall be available for use only to restore, replace, or acquire the equivalent of such natural resources; and against all Non-Federal Defendants for compensatory damages for all past loss-of-use natural resource

---

[1]   CERCLA prohibits the recovery of NRD "where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980." 42 U.S.C. § 9607(f)(1).

[2]   Before Magistrate Judge Paul J. Cleary, defendants have argued that the Tribe may not use NRD recovered under CERCLA or state law to pay any part of their attorney fees and costs, because CERCLA expressly requires that all NRD be used to restore or replace the damaged natural resources. In its response to BNSF's motion for judgment on the pleadings, the Tribe states that it will not use any amount recovered for NRD arising after December 11, 1980 to pay attorney fees, even though it argues that this restriction does not apply to the Tribe. Dkt. # 594, at 4 n.3. The Tribe states that Oklahoma law permits a trustee to use funds in the trust corpus to pay attorney fees and NRD awarded for harm occurring wholly before December 11, 1980 is not subject to CERCLA's prohibition on the payment of attorney fees from NRD. The parties' arguments concerning the payment of attorney fees out of any NRD recovery is beyond the scope of the issues raised in BNSF's motion for judgment on the pleadings and will not be addressed in this Opinion and Order.

damages from December 11, 1980 until July 7, 2008, with such judgment ordering that upon collection all awarded compensatory damages shall thereafter be placed in a court-supervised trust with the Quapaw Tribe acting as trustee, and such sums shall be available for use only restore replace, or acquire the equivalent of such natural resources . . . ."

Dkt. # 570, at 38.

## II.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[3] Nelson v. State Farm Mut. Auto Ins. Co., 419 F.3d 1117, 1119 (10th Cir. 2005). Thus, a court must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." Id. (internal quotation marks and citation omitted); Ramirez v. Dept. of Corr., State of Colo., 222 F.3d 1238, 1241 (10th Cir. 2000). To survive judgment, a "complaint must contain enough facts to state a claim to relief that is plausible on its face." Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007) (internal quotation marks and citation omitted). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting

---

[3] When BNSF filed its motion for judgment on the pleadings, it specifically reserved the right to file a motion for summary judgment challenging the Tribe's standing to assert state law claims for NRD. Dkt. # 573, at 1 n.1. BNSF has now filed such a motion for summary judgment. Dkt. # 616. The Tribe objects to BNSF's reservation and asks the Court to consider evidence outside the pleadings when ruling on this motion. Dkt. # 594, at 8 n.1. However, the Tribe has attached only one exhibit, the expert report of John M. Brown submitted in ASARCO, Inc.'s bankruptcy proceedings, and it is not necessary for the Court to consider this exhibit to rule on the legal issues raised in BNSF's motion. BNSF's motion for judgment on the pleadings will not be converted into a summary judgment motion, and the Tribe's standing to pursue NRD will be addressed in the Court's ruling on the pending motions for summary judgment. Dkt. ## 616, 618.

5

United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). Fed. R. Civ. P. 12(d) further provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Hence, under Rule 12(c), a court should consider only matters in the pleadings or incorporated by reference in, or attached to, the answer or complaint. Park Univ. Enters., Inc., 442 F.3d at 1244; GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997).

### III.

BNSF's motion for judgment on the pleadings (Dkt. # 573) asserts that CERCLA preempts the Tribe's state law claims for NRD wholly or in part. BNSF's arguments fall into two broad categories. First, it argues that the Tribe's claims for NRD damages are entirely preempted until the EPA's remedial work is completed. Second, it argues that the Tribe's request for NRD before December 11, 1980 directly conflicts with CERCLA's remedial scheme and should be preempted. It also argues that the Tribe is attempting to avoid the Court's opinion and order (Dkt. # 560) by "splitting their single, indivisible claims for past and interim loss of use damages" based on the "fictitious temporal cutoff" of December 11, 1980, and the Tribe should be required to bring all of its claims in a single lawsuit once the EPA's remedial work is completed. Dkt. # 573, at 1. The Tribe responds that CERCLA has three savings provisions, and CERCLA preempts state law only if the enforcement of a state law remedy would directly conflict with CERCLA's remedial scheme. It also argues that BNSF's concerns about multiple or piecemeal litigation are premature, because there is only one lawsuit pending and the Tribe has not attempted to file multiple lawsuits over the same subject matter.

**A.**

The Supremacy Clause of the United States Constitution states that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. To determine whether a federal statute preempts a state law or statute, a court must determine whether Congress expressly or impliedly intended to preempt state law by enacting a federal statute. Emerson v. Kansas City Southern Ry. Co., 503 F.3d 1126, 1129 (10th Cir. 2007). In the absence of express preemption, a court may find that a federal statute impliedly preempts state law in two ways. If Congress intends that federal law should entirely occupy a particular field, state regulation in that field is preempted. California v. ARC America Corp., 490 U.S. 93, 100 (1989). Even if Congress does not intend to occupy the field and wholly prevent state regulation, a state law may be preempted by federal law to the extent that it actually conflicts with federal law. Id. The Tenth Circuit has found an actual conflict between state and federal law in cases "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Choate v. Champion Home Builders Co., 222 F.3d 788, 792 (10th Cir. 2000).

CERCLA does not expressly preempt state law and, quite to the contrary, CERCLA contains three separate savings provisions preserving the right of states to impose additional liability for the release of a hazardous substance. See 42 U.S.C. § 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State."); 42 U.S.C. § 9652(d) ("Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to the release of

7

hazardous substances or other pollutants or contaminants."); 42 U.S.C. § 9659(h) ("This chapter does not affect or otherwise impair the rights of any person under Federal, State, or common law, except with respect to the timing of review as provided in section 9613(h) of this title . . . ."). The Tenth Circuit has found that Congress did not intend to occupy the field of hazardous substance removal and cleanup, and has applied conflict preemption to resolve claims that CERCLA preempts allegedly conflicting state law. New Mexico, 467 F.3d at 1244 ("Given these saving clauses, as well as the spirit of cooperative federalism running throughout CERCLA and its regulations, we may safely say Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination."); United States v. City and County of Denver, 100 F.3d 1509 (10th Cir. 1996) (applying conflict preemption analysis to determine if local ordinance preempted by CERCLA); United States v. Colorado, 990 F.2d 1565, 1575 (10th Cir. 1993) ("Congress clearly expressed its intent that CERCLA should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem."). Therefore, the Court will apply conflict preemption principles to BNSF's argument that CERCLA preempts the Tribe's state law claims for NRD. BNSF does not argue that it would be impossible to comply with state and federal law. The parties agree that the appropriate inquiry is whether the Tribe's NRD claim, or any part thereof, "stands as an obstacle to the accomplishment of congressional objectives as encompased in CERCLA." New Mexico, 467 F.3d at 1244.

**B.**

BNSF argues that the Tribe's claim for NRD under state law conflicts with CERCLA's remedial scheme because these claims are nothing more than an attempt to avoid the timing requirements and limitations on damages provided by CERCLA. The Tribe responds that the remedies provided by Oklahoma law, as limited by the Tribe in its fifth amended complaint, do not conflict with CERCLA's remedial scheme and CERCLA does not preempt its state law claims. Both parties rely on the Tenth Circuit's decision in New Mexico to support their arguments.[4]

In New Mexico, the Tenth Circuit recognized that CERCLA does not completely preempt state law claims, but CERCLA impacts the availability of NRD under state law. 467 F.3d at 1247. The Tenth Circuit stated that:

> CERCLA's comprehensive NRD scheme preempts any state remedy designed to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource. We reach this conclusion notwithstanding CERCLA's saving clauses because we do not believe that Congress intended to undermine CERCLA's carefully crafted NRD scheme through these saving clauses.

Id. The plaintiffs there argued that the EPA's remediation of New Mexico's South Valley was "underinclusive and inadequate," because some of the contaminated groundwater resided outside of the EPA's cleanup site and the EPA's proposed cleanup would not restore the remaining groundwater to an appropriate water quality standard. Id. at 1248. The Tenth Circuit dismissed the plaintiffs' claim that the EPA's selected remedy was inadequate, because this was a direct attack on the EPA's cleanup and was prohibited under 42 U.S.C. § 9613(h). Id. at 1250. The plaintiffs' claim

---

[4] A previous opinion and order contained a lengthy discussion of New Mexico, which will not be repeated. Dkt. # 560, at 17-20. Instead, the Court will analyze the pertinent parts of New Mexico, specifically the Tenth's Circuit's analysis of CERCLA's preemptive effect on the remedies available under state law.

9

for loss-of-use damages was not supported by the evidence, because the evidence showed that the allegedly contaminated groundwater was replaced by another source in a timely manner. Id. at 1252. However, the Tenth Circuit had "no quarrel with the general proposition" that a trustee is "entitled to recover for all interim loss-of-use damages on behalf of the public from the time of any hazardous waste release until restoration" if the requested remedy was limited to the specific injury suffered by the trustee. Id. at 1251.

New Mexico allows a state law claim for loss-of-use NRD if such a claim is supported by the evidence and the requested remedy would not interfere with CERCLA's goals of replacement and restoration of a contaminated natural resource. Based on a plain reading of the fifth amended complaint, it appears that the Tribe's request for NRD is crafted to comply with New Mexico. As a remedy for defendants' alleged public nuisance, the Tribe seeks "such sums . . . to restore, replace, or acquire the equivalent of such natural resources . . . ." Dkt. # 570, at 38-39. The Tribe requests the same relief in its claims for strict liability and negligence. Id. at 45, 46. The requested NRD do not facially conflict with CERCLA's requirement under § 9607(f) that NRD are available only to "restore, replace, or acquire the equivalent of such natural resources." 42 U.S.C. § 9607(f)(1). As a pleading matter, the Tribe's claims for NRD comply with New Mexico and the requested NRD do not conflict with the accomplishment of CERCLA's remedial scheme.

BNSF argues that permitting the Tribe to recover NRD before the EPA's remedial action at Tar Creek is complete would "invade the financial resources" of parties attempting to comply with the EPA's remediation orders, and any recovery for NRD would also interfere with CERCLA's stated preference for claim settlement. Dkt. # 573, at 20-21. For conflict preemption to apply, the state law must be a "material impediment to the federal action, or thwart [ ] the federal policy in a

10

material way." Choate, 222 F.3d at 796 (quoting Mount Olivet Cemetery Assoc. v. Salt Lake City, 164 F.3d 480, 489 (10th Cir. 1998)).  BNSF's concern that any award of NRD would interfere with its ability to comply with a CERCLA remediation order is too remote to justify preemption of the Tribe's request for NRD under state law, and it has cited no authority supporting this argument. Likewise, this lawsuit will not interfere with BNSF's right to settle any CERCLA claim against it because, if BNSF chooses to settle its CERCLA liability with the federal government, it will still receive the benefit of CERCLA's bar on contribution claims of other potentially responsible parties. While the Tribe may not use common law and CERCLA to recover the same removal and assessment costs, see Bedford Affiliates v. Sills, 156 F.3d 416, 426 (2d Cir. 1998), CERCLA does not preempt state law claims in the absence of a conflict between CERCLA and state law.  Based solely on the language of the fifth amended complaint, the Tribe's request for NRD complies with § 9607(f) and New Mexico, and Tribe's claim for NRD would not interfere with CERCLA's goal of restoring and replacing contaminated natural resources.[5]

### C.

In the alternative, BNSF claims that CERCLA does not permit a trustee to recover NRD that arose before December 11, 1980, and any state law that would permit such recovery is preempted. The Tribe responds that CERCLA does not modify or limit any right to recovery for NRD under state law occurring before December 11, 1980, because there is no direct conflict between state and federal law.

---

[5] The Court's ruling is based only on the pleading and defendants may renew a preemption argument if the relief sought by Tribe, as shown by the evidence adduced during discovery, would create a conflict between state and federal law.

CERCLA does not preempt state laws that provide remedies unavailable under CERCLA, because these types of state law claims do not conflict with CERCLA's remedial scheme. See Booth Oil Site Administrative Group v. Safety-Kleen Corp. , 532 F. Supp. 2d 477, 510-11 (W.D.N.Y. 2007) (New York Navigation Law did not conflict with CERCLA to the extent that state law authorized recovery for petroleum cleanup not covered by CERCLA); Coastline Terminals of Connecticut, Inc. v. USX, 156 F. Supp. 2d 203, 208-09 (D. Conn. 2007) (CERCLA excludes recovery for damages related to cleanup of petroleum contamination and Connecticut statue authorizing recovery of petroleum cleanup costs does not conflict with CERCLA). CERCLA is clear that it does not provide a remedy for NRD that occurred wholly before December 11, 1980. 42 U.S.C. § 9607(f)(1); Montana v. Atlantic Richfield Co., 266 F. Supp. 2d 1238, 1242 (D. Mont. 2003). The Tribe has limited it request for NRD, whether before or after December 11, 1980, to the cost of restoring or replacing damaged natural resources, and the Tribe's requested NRD do not conflict with the express goals of CERCLA's NRD scheme.[6]  Therefore, it is unclear how the Tribe's claims for NRD arising before December 11, 1980 conflict with CERCLA's remedial scheme, and the Court does not find that the Tribe's state law claims for NRD are preempted by CERCLA.

---

[6]  BNSF argues that the Tribe's claim for NRD is unliquidated, because it is not possible to determine loss-of use damages until the EPA's remediation of Tar Creek is completed. Dkt. # 573, at 26-27. However, the Tribe's claim for loss-of-use damages is limited to NRD that arose before July 7, 2008 and the Tribe's claim for loss-of-use damages is not dependent on the completion of the EPA's remedial work. Dkt. # 570, at 39. Based on the allegations of the fifth amended complaint, the Tribe is not requesting unliquidated NRD and BNSF's concern that the Tribe has alleged state law claims seeking an unrestricted award of monetary damages is meritless.

BNSF's final argument is that the Tribe is impermissibly attempting to split its claims for NRD based on a "fictitious temporal cutoff" of December 11, 1980 and Oklahoma law does not permit a party to pursue two separate lawsuits for one loss. Dkt. # 23-25. BNSF's argument appears to be a pre-emptive use of doctrines such as res judicata or issue preclusion, and its argument is premature. If this case is resolved and the Tribe attempts to file a second lawsuit, BNSF may raise its argument at that time. However, there is currently one lawsuit pending, and BNSF's concerns about piecemeal or multiple litigation are speculative. The Court will not second-guess the Tribe's decision to file its lawsuit at the present time or to limit the relief sought in this lawsuit, and the mere possibility of multiple litigation at some future date does not require dismissal of the Tribe's claims for NRD in this case.

**IT IS THEREFORE ORDERED** that defendant Burlington Northern Sante Fe Railway Co.'s Motion for Judgment on the Pleadings (Dkt. # 573) is **denied**.

**DATED** this 23rd day of February, 2009.

_Claire V. Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT