# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE QUAPAW TRIBE OF OKLAHOMA, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 03-CV-0846-CVE-PJC<br>) |
| BLUE TEE CORP., et al., | )<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is defendants' Motion to Dismiss for Failure to Join Required Parties and Brief in Support Thereof (Dkt. # 697). Defendants Blue Tee Corp. (Blue Tee) and Gold Fields Mining, LLC (Gold Fields) argue that the State of Oklahoma (the State) is a necessary and indispensable party to The Quapaw Tribe of Oklahoma's (the Tribe) claims for natural resources damages (NRD), that joinder of this party is not feasible, and that the Tribe's NRD claims should be dismissed under Fed. R. Civ. P. 19.[1] Defendants also argue that the individual plaintiffs must join all affected landowners as parties in order to proceed with their claims, because defendants could be subject to multiple or inconsistent liability if the absent property owners are not joined as parties.[2]

---

[1] Defendants The Doe Run Resources Corporation (Doe Run) and NL Industries, Inc. (NL Industries) also joined in the motion to dismiss, but plaintiffs have dismissed their claims against Doe Run and NL Industries.

[2] The individual plaintiffs have voluntarily dismissed their claims against all defendants and defendants' motion to dismiss is moot as to the individual plaintiffs. See Dkt. ## 738, 743, 745, 749.

**I.**

The Tribe and individual Tribal members filed this lawsuit on December 10, 2003, alleging claims of public nuisance, private nuisance, trespass, unjust enrichment, strict liability, and deceit against the successor entities of mining companies that operated in the former Tri-State Mining District. Dkt. # 1. On May 5, 2004, plaintiffs filed their first amended complaint and the Tribe sought relief under Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA). Dkt. # 146. The Tribe requested damages for "1) the cost to restore, replace, or acquire the equivalent of such natural resources, 2) the compensable value of lost services resulting from the injury to natural resources, and 3) the reasonable cost of assessing injury to the natural resources and the resulting damages." Id. at 77. The case was stayed for almost two years while plaintiffs pursued an interlocutory appeal to the Tenth Circuit Court of Appeals regarding tribal sovereign immunity from counterclaims of recoupment. The Tenth Circuit affirmed the former assigned judge's[3] decision to allow defendants to proceed with counterclaims for recoupment. Dkt. # 305.

Following the Tenth Circuit's decision, plaintiffs requested leave to file a second amended complaint, inter alia, to conform their pleading to the rulings of the Tenth Circuit and this Court, to add the United States as a party to the Tribe's CERCLA claim, and to add BNSF as a defendant to plaintiffs' common law claims. Dkt. # 320. The Court granted plaintiffs' motion to amend. In addition to the amendments noted above, the Tribe also limited its claims for NRD to "all past and interim loss-of-use [NRD] on behalf of the [the Tribe] from the time of any hazardous substance release until restoration." Dkt. # 330, at 50. On June 1, 2007, plaintiffs filed their third amended

---

[3]  The case was randomly reassigned to the undersigned on March 16, 2006. Dkt. # 264.

complaint, adding a CERCLA claim against BNSF and omitting any class action allegations from their prior pleadings. Dkt. # 367.

Defendants asked the Court to bifurcate the case into two phases. They asserted that defendants' liability for NRD should be addressed before assessing the amount of damages that plaintiffs could recover. The Court held a status conference on July 31, 2007, and addressed defendants' request for bifurcation Dkt. # 412. At the status conference, defendants also argued that the Tribe lacked standing to pursue NRD because the Tribe was not a trustee over many of the natural resources identified in the third amended complaint. The Court determined that bifurcation was necessary, but not as originally proposed by defendants. The Court entered a scheduling order on issues related to the Tribe's claims for NRD and the Tribe's status as a trustee to assert claims for harm to natural resources. Dkt. # 408. The Court entered a separate scheduling order setting deadlines and a trial on any issues that remained after the Court determined the Tribe's standing to assert its CERCLA and common law claims for NRD. Dkt. # 409.

Plaintiffs provided their first supplemental Rule 26 disclosures[4] on October 26, 2007, and stated that they would be seeking damages based on an agricultural enterprise model. Dkt. # 697, Ex. A, at 7-10. The Tribe proposed that certain types of crops could have been grown on the affected land from 1910 to the present, and estimated the value of the crops for the entire time period. Defendants moved for summary judgment arguing, inter alia, that the Tribe lacked standing to recover damages based on an agricultural enterprise model, because these damages belonged to the private landowners. The Court found that the Tribe could not rely on parens patriae standing as

---

[4] Plaintiffs' initial disclosures under Rule 26 simply stated that their damages were "[u]nknown at this time," but the evidence does not show when plaintiffs served their initial disclosures on defendant. See Dkt. # 697, Ex. A, at 7; Dkt. # 728, Ex. 2, at 4.

3

a basis to seek damages belonging to the individual landowners, and held that the Tribe lacked standing to recover damages using an agricultural enterprise model. Dkt. # 678, at 13-25. However, the Court held that the Tribe had standing in its quasi-sovereign capacity to protect natural resources on Tribal lands and allowed the Tribe to supplement its initial disclosures using a new model to calculate damages for NRD. Id. at 24-25.

On October 9, 2009, the Tribe provided its second supplemental Rule 26 disclosures to defendants using a habitat equivalency analysis (HEA) to estimate its NRD. The Tribe sought NRD for a wide range of natural resources:

> The Tribe is conducting HEA analyses for aquatic and terrestrial habitat (and biota dependent on these habitats) injured by the unpermitted release of hazardous contaminants from mining activities. Terrestrial resources of concern to the Tribe include natural resources situated on restricted lands of the members of the Tribe, lands held in trust for the Tribe, and on lands owned in fee simple by the Tribe. Such natural resources included plants, birds, mammals and other biota associated with these terrestrial habitats. Aquatic resources of concern to the Tribe include surface water resources utilized by the Tribe; riparian areas situated on restricted lands of the members of the Tribe, lands held in trust for the Tribe, and on lands owned in fee simple by the Tribe; and biota (including without limitation, macroinvertebrates, mussels, clams, crayfish and fish) that utilize these habitats.

Id., Ex. B, at 8. The Tribe provided its third supplemental Rule 26 disclosure including additional information, including the HEA formula, it would be relying on to estimate its NRD. Id., Ex. C, at 10-14. On November 25, 2009, the Tribe provided its fourth supplemental Rule 26 disclosures stating that the Tribe would be relying, in part, on Michael C. Donlan's HEA that he prepared during ASARCO, LLC's (ASARCO) bankruptcy proceedings. Id., Ex. D, at 15. Donlan's HEA includes NRD for past and future damages to terrestrial resources and future damages to aquatic resources, but he did not estimate damages for past harm to aquatic resources. The Tribe notified defendants that it may obtain a new HEA including additional categories of damages. Id. at 16.

On December 1, 2009, defendants Doe Run, Blue Tee, Gold Fields, and NL Industries filed this motion to dismiss the Tribe's NRD claims due to the Tribe's failure to join a required party under Rule 19. Defendants assert that the State has a non-frivolous interest in natural resources and land in and near the Tar Creek Superfund Site (Tar Creek), and defendants face a significant risk of multiple or inconsistent liabilities if the State is not joined as a party to the lawsuit. However, the State has sovereign immunity from suit. Defendants argue that the entire case should be dismissed, because the Tribe is not able to join the State as a party due to the State's sovereign immunity. Defendants cite State of Oklahoma v. Tyson Foods, Inc., 258 F.R.D. 472 (N.D. Okla. 2009), in which the court dismissed the State's claims for monetary damages due to the State's failure to join the Cherokee Nation as a party in a case concerning the alleged contamination of the Illinois River Watershed (IRW) by poultry companies and farmers.

On December 18, 2009, the Tribe provided its fifth supplemental Rule 26 disclosures, and stated that "[t]his preliminary assessment only addresses a terrestrial HEA as the Tribe no longer intends to prepare an aquatic HEA." Dkt. # 728, Ex.2, at 17. The Tribe divided its proposed HEA into two parts. First, the Tribe calculated "the amount of habitat lost as a result of the mining and railroad operations, and the extent to which the proposed remediation and restoration fully re-establishes lost habitat." Id. at 17. Second, the Tribe estimated the amount of land it would take to replace the quantity of habitat irreparably damaged by mining activity. Id. at 18. On January 20, 2010, the Tribe provided its sixth supplemental Rule 26 disclosures clarifying that the Tribe's HEA would not "identify, describe, or include any wildlife, be it terrestrial or aquatic," and its HEA would be calculated using a methodology known as a floristic quality assessment (FQA). Id. at 23. Thus,

5

the Tribe is no longer seeking NRD for harm to aquatic or land-based wildlife or waterways running through Tribal land.

## II.

A motion to dismiss for failure to join a necessary party falls under Fed. R. Civ. P. 12(b)(7). Defendants bear the burden to show that the absent party claims a non-frivolous interest that will be impaired if it is not joined as a party. Davis v. United States, 192 F.3d 951, 958 (10th Cir. 1999). Defendants' burden "can be satisfied by providing 'affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994). However, a motion to dismiss under Rule 12(b)(7) "will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." Raytheon Co. v. Continental Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000). If the Court determines that the absent party is not a required party under Rule 19(a), it is not necessary for the Court to consider whether the case should be dismissed under Rule 19(b). Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir. 1988).

## III.

Defendants argue that the State is a required party but cannot be joined as a party due to sovereign immunity, and the case should be dismissed due the absence of an indispensable party. The Tribe responds that it has amended its Rule 26 disclosures to eliminate any NRD related to aquatic resources or wildlife that may migrate onto State land and has limited its request for NRD to terrestrial plant life on Tribal lands, and defendants' motion to dismiss is moot. Defendants' reply

that the Tribe's "last-minute narrowing" of its HEA does not moot defendants' motion to dismiss or eliminate the risk of interfering with the State's interests.

Under Rule 19, a district court must determine (1) if the absent party is a "required" party and (2) if the required party is indispensable to the litigation. The Wilderness Society v. Kane County, Utah, 581 F.3d 1198, 1217-18 (10th Cir. 2009). A non-party must be joined as a required party if:

> (A) in the person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a court determines that a non-party is a required party under Rule 19(a), the court must consider whether "in equity and good conscience" the case should proceed without the absent party or be dismissed. Sac & Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001). Rule 19 provides four factors that a court must balance to make this determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by :
>
>> (A) protective provisions in the judgment; or
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and

>  (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  These factors must be applied in a "practical and pragmatic but equitable manner."  Symes v. Harris, 472 F.3d 754, 759 (10th Cir. 2006).

The Court finds that much of defendant's motion to dismiss is moot based on the Tribe's decision to limit the relief sought to NRD for harm to plant life on Tribal lands.  Defendants rely heavily on Tyson Foods, but the overlapping interests in aquatic natural resources that was present in Tyson Foods is no longer an issue in this case.  In Tyson Foods, the State alleged that poultry companies and farmers were damaging the IRW by storing and disposing of poultry litter on lands located within the IRW, and the State sought injunctive relief and monetary damages.  Tyson Foods, 258 F.R.D. at 473.  However, the Cherokee Nation also claimed an interest in the IRW and the Cherokee Nation was not a party.  Id. at 474.  Specifically, the Cherokee Nation had enacted statutes regulating the disposal of waste in the IRW and had rights to water from the IRW as a matter of federal law.  Id. at 478.  The court also found that the Cherokee Nation was an indispensable party as to the State's claims for money damages, because defendants would be subject to a risk of multiple or inconsistent obligations and there was no way to minimize this risk.  Id. at 481-82.  This case is distinguishable from Tyson Foods, because the Tribe has withdrawn its request for NRD as to aquatic life, waterways, or migratory wildlife.  Unlike Tyson Foods, the natural resources at issue are located solely on Tribal lands and do not fall within the regulatory authority of the State.  Based on the Tribe's fifth and sixth amended Rule 26 disclosures, defendants' motion to dismiss is moot to the extent that defendants sought dismissal due to an overlapping State interest in aquatic life, waterways, or migratory wildlife.

Defendants argue that the State "claims" an interest in the plant life and ecosystems within Oklahoma, even if those natural resources are located on Tribal land. Defendants also argue that the Tribe is seeking damages for natural resources on non-Tribal lands, and the State claims an interest in those resources. However, defendants overstate the Tribe's damages assessment, in an attempt to create an overlapping State interest, and it is not clear that the State claims an interest as to any plant life or habitat over which the Tribe asserts trusteeship. The Tribe acknowledges that it mistakenly included "non-Tribal acreage" in its preliminary damage assessment, but it would correct its HEA to eliminate any request for damages as to non-Tribal lands. Defendants argue that the Tribe's amendments to its Rule 26 disclosures are irrelevant because, regardless of the scope of the Tribe's claims, the State "claims" an interest over the entire Tar Creek site and defendants have thereby met their burden to show that Rule 19(a) is satisfied. Defendants' argument is based on documents from the Chapter 11 bankruptcy proceedings of ASARCO, a mining company that formerly operated in the Tri-State Mining District. While the State filed a claim in the ASARCO bankruptcy, the State presented a damages estimate in conjunction with the United States Department of the Interior (DOI), the States of Missouri and Kansas, and six Indian tribes, and each sovereign entity clarified that it was seeking damages only in relation to land possessed by that sovereign. The DOI informed the bankruptcy court that it was a co-trustee with the Tribe and provided a map showing the boundaries of land held in trust for the Tribe and allotted land held by individual Tribal members. Dkt. # 697, Ex. I, at 14. Oklahoma is not designated as a co-trustee for natural resources located solely on Tribal lands. The natural resources trustees acknowledge in their damages estimate that there is a "checkerboarding" within the historic boundaries of certain Indian reservations, but distinguish between land still held by the Indian tribes and their members and land

9

owned by non-Indians that is subject to the laws of Oklahoma. Id. at 16 n.7. The DOI, as co-trustee for the Indian tribes, clarified that the various Indian tribes were seeking NRD on their own behalf and exclusive of the State, and the State would serve as Trustee for "interspersed" non-Indian holdings. Id. at 20 n.8. It is not clear that the State is claiming an interest for terrestrial plant life on Tribal land, because the evidence shows that the State is not claiming trusteeship over natural resources located solely on Tribal land. Thus, the State is not a required party based on the Tribe's amended Rule 26 disclosures, because the State does not claim an interest in the subject matter of this litigation.

Even if the Court were to assume that the State claimed an interest in the subject matter of this case, dismissal would not be appropriate under Rule 19(b). The fourth Rule 19(b) factor weighs most heavily against dismissal. If this case were dismissed, the Tribe would have no recourse for harm to natural resources located solely on Tribal land unless the State also chose to join a lawsuit. Defendants argue that the Tribe could "rejoin the Tar Creek Trustee Council and pursue its natural resource damage claim jointly with State." Dkt. # 697, at 26. However, the Tar Creek Trustee Council has not filed a lawsuit for harm to the natural resources within the Tar Creek Superfund Site and there is no evidence that it is likely to do so, and this is the functional equivalent of no remedy at all. The other Rule 19(b) factors do not favor dismissal. A judgment rendered without the presence of the State will not prejudice the existing parties, because the Tribe has limited its claims for NRD to plant life on Tribal land. The Court can minimize any prejudice to defendants by limiting relief for NRD to natural resources within the sole trusteeship of the Tribe and, even if the State were to bring a separate lawsuit for NRD at a later date, there is little or no risk of multiple liabilities for harm to same natural resources. The public's interest in resolution of disputes as a

whole will not be impaired if this case is permitted to proceed, because this case will fully resolve the Tribe's claims for NRD. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968). Under defendants' theory, the Court would have to dismiss any lawsuit not brought by the Tar Creek Trustee Council, because there are multiple sovereign entities with potential claims for NRD and a lawsuit without any one of those entities would not fully resolve this dispute. As the Court has noted, the Tribe was not required to wait for the Tar Creek Trustee Council to act and the Tribe's claims for NRD will be fully resolved by this lawsuit. Even if the State claimed an interest in the subject matter of this case, dismissal under Rule 19(b) would not be appropriate.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss for Failure to Join Required Parties and Brief in Support Thereof (Dkt. # 697) is **denied in part** and **moot in part**: the motion is denied as to dismissal of plaintiff's claims for NRD for terrestrial plant life on Tribal lands and moot as to the Tribe's former claims for NRD for aquatic resources and wildlife and the claims of the individual plaintiffs.

**DATED** this 20th day of August, 2010.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE