**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE QUAPAW TRIBE OF OKLAHOMA, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BLUE TEE CORP., et al., )<br>)<br>Defendants. ) | Case No. 03-CV-0846-CVE-PJC |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Strike the Untimely, "Supplemental" Expert Reports of John Brown and Edward Whitelaw and Brief in Support (Dkt. # 770). Defendants ask the Court to exclude the supplemental reports of two of plaintiff's experts, John Brown and Edward Whitelaw, because these reports rely on new testing and data that plaintiff did not obtain until after the deadline to exchange expert reports had passed. Plaintiff The Quapaw Tribe of Oklahoma (the Tribe) responds that it was not aware of the need for additional testing when Brown and Whitelaw submitted their initial reports, and Brown and Whitelaw supplemented their reports in a timely manner when learning that additional testing might be required. Dkt. # 811, at 5-6.

**I.**

On December 10, 2003, the Tribe and individual Tribal members filed this case alleging that mining companies operating in the former Tri-State Mining District harmed natural resources on land owned by the Tribe or Tribal members, and they sought natural resources damages (NRD) under federal and state law. Dkt. # 1. The case was delayed due to extensive motion practice on motions to dismiss filed by several defendants and the Tribe's interlocutory appeal to the Tenth Circuit Court of Appeals. The Court held a scheduling conference on July 31, 2007, and entered two

scheduling orders. See Dkt. # 412. The first scheduling order (Dkt. # 408) set deadlines for discovery and briefing as to the Tribe's trusteeship over natural resources and its standing to pursue claims for NRD. The second scheduling order (Dkt. # 409) provided standard scheduling deadlines for discovery and a jury trial on issues of liability and damages. On July 7, 2008, the Court dismissed the Tribe's claim for NRD under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA). Dkt. # 560. The Court entered an amended scheduling order resetting deadlines for the remaining parties to conduct discovery and file dispositive motions addressing the Tribe's standing to seek NRD and, at the parties request, the Court refrained from entering an amended scheduling on the issues of liability and damages. Dkt. # 566. Defendants filed a motion for summary judgment (Dkt. # 618) asserting that the Tribe lacked standing to pursue NRD on behalf of Tribal members.

On September 2, 2009, the Court granted in part defendants' motions for summary judgment, and held that the Tribe lacked standing to recover damages that would belong solely to individual Tribal members. Dkt. # 678, at 13-25. In particular, the Court rejected the Tribe's reliance on an agricultural enterprise model to calculate NRD. However, the Court found that the Tribe had standing to pursue NRD for natural resources within the sole trusteeship of the Tribe, and directed the Tribe to "expeditiously supplement its initial disclosures with a new damages calculation." Id. at 25 n.9. This ruling permitted the Tribe to proceed with its case, but it had to decide on a new model to calculate NRD. The Court entered an amended scheduling for all remaining claims and, inter alia, directed plaintiff to submit expert reports no later than February 17, 2010 and for defendant to submit expert reports by March 3, 2010. Defendant Burlington Northern Sante Fe Railway Co. (BNSF) filed a motion for relief from the scheduling order (Dkt. # 690), and the motion

2

was referred to Magistrate Judge Paul J. Cleary for a hearing. The magistrate judge held a hearing on December 4, 2009. Dkt. # 702.

BNSF argued that the deadline to submit expert reports in the scheduling order did not provide BNSF sufficient time to conduct its own sampling, and that it could not prepare a defense without an extension of the expert discovery deadline. Dkt. # 708, at 52-57. The Tribe opposed BNSF's motion for relief from the scheduling order and, in particular, the Tribe argued that BNSF should not be given additional time to conduct scientific testing or obtain expert reports. Counsel for the Tribe stated that the Tribe's sampling and data collection had been completed two years before and BNSF should have been sampling and collecting data beginning in 2007. Id. at 62. Counsel for the Tribe twice stated that it had completed its sampling and it did not need additional time to prepare expert reports. Id. at 36 ("we don't have anybody out there sampling fish and wildlife or, you know, counting birds or anything like that. So what we've got -- what there will be is contained within the materials already provided to them."); id. at 63 ("we've done sampling for years. . . . I mean, we've got the data. If they've got a problem with our data, they've had it. So I just wanted you to be aware that we -- that this is nothing new."). In lieu of extending defendants' deadline to submit expert reports, the Tribe's attorney proposed amending the scheduling order to allow for rebuttal reports by both sides. Id. at 60. However, the magistrate judge rejected this proposal and informed counsel that rebuttal reports would not be permitted. Id. at 70-71 ("I'm afraid that once we get to the rebuttal experts, we're going to be going through this all over again on the rebuttal side. That somebody's rebuttal report uses a model that we didn't know was going to be there and now we need to have 60 days to a year to respond to that. There's got to be an end to all

of this."). Plaintiff's counsel renewed his request for a deadline to submit rebuttal reports, and the magistrate judge responded that rebuttal reports are "not on the schedule." Id. at 72.

The Court entered an amended scheduling order (Dkt. # 727) resetting defendants' deadline to submit expert reports to June 18, 2010. The Tribe requested a one week extension of its deadline to submit expert reports and a corresponding one week extension of defendants' deadline. Dkt. # 732. The matter was referred to the magistrate judge, and he granted plaintiff's motion. Plaintiff's deadline to submit expert reports was extended to February 24, 2010, and defendants' deadline was extended to June 25, 2010. Dkt. # 734.

Plaintiff submitted its expert reports on February 24, 2010, including the expert reports of Brown and Whitelaw. See Dkt. # 770-1 (Brown's initial expert report); Dkt. # 770-2 (Whitelaw's initial expert report). Brown's deposition was scheduled for April 19, 2010, but Brown was diagnosed with a heart condition and required immediate medical treatment. Dkt. # 854-1, at 4. Defendants agreed to reschedule Brown's deposition, and Brown was not deposed until June 10, 2010. Defendants deposed Frank Norman, the Tribe's ecological expert, on April 23, 2010 and questioned Norman about the reliability of his Floristic Quality Index (FQI) data. Norman had relied on data compiled by Brown to develop his FQI, and Norman provided his report to Whitelaw, an economist, to calculate the Tribe's NRD using a Habitat Equivalency Analysis (HEA). Following Norman's deposition, counsel for the Tribe, George Nino, contacted Brown and asked Brown to conduct new sampling to "corroborate Frank Norman's FQI data." Dkt. # 811-7, at 31.

Defendants deposed Whitelaw on May 18-19, 2010, and Whitelaw testified that Brown was conducting new plant sampling. Dkt. # 811-8, at 4. Whitelaw stated that Brown's updated FQI data would affect his HEA calculation, but his reasoning would remain the same. Id. The parties do not

4

dispute that Whitelaw's deposition was the first notice given to defendants that the Tribe had commissioned new sampling. The Tribe submitted Brown's supplemental report (Dkt. # 770-3) on June 2, 2010. Counsel for defendants examined Brown about the new FQI data at his deposition on June 10, 2010.

At Brown's deposition that day, he acknowledged that he and Norman had intended to conduct new sampling before he submitted his initial expert report in February 2010, but he did not disclose this to defendants in his initial report. Dkt. # 770-4, at 3. Brown stated:

> Well, Frank Norman and I had started planning back before the initial reports were done to go down, make a trip and inspection. And it just never materialized. So when was that? It was sometime before Frank and I submitted the initial report in February.
>
> And we couldn't do an FQI then anyway. So I decided that -- after George Nino called me and said can you go down there now, John, and do an assessment. And I said I could, you know, I could fit it into my schedule. And I went down and did it.

Id. Defendants examined Brown about his new FQI data, but defendants state that they did not have an opportunity to submit Brown's supplemental report to their own experts before the deposition. Dkt. # 770, at 11.

On July 9, 2010, the Tribe produced Whitelaw's supplemental report and, based on Brown's new sampling data, Whitelaw had increased the Tribe's damages calculation. However, Whitelaw had already been deposed in May 2010, and defendants did not have an opportunity to depose Whitelaw about the contents of his supplemental report.

**II.**

Defendants argue that the Tribe produced Brown's and Whitelaw's supplemental reports well after the Tribe's deadline to submit expert reports, and the untimely expert reports should be excluded under Fed. R. Civ. P. 37(c). The Tribe responds that the new reports were proper

5

supplementation of timely disclosed expert opinions, and the Court should not reach defendants' request to strike the reports under Rule 37(c). The Tribe also argues that defendants have not been prejudiced by the late disclosure of Brown's and Whitelaw's "supplemental" reports, because defendants had an opportunity to depose Brown about his supplemental report and they have made no attempt to re-depose Whitelaw.

The Federal Rules of Civil Procedure require an expert witness to prepare a report containing a "complete statement of all opinions to be expressed and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B). A party's failure to disclose the identity of an expert witness or provide a timely expert report requires the court to automatically exclude expert testimony unless the violation of Rule 26(a)(2) was justified or was harmless under the circumstances. Fed. R. Civ. P. 37(c)(1); Jacobsen v. Deseret Book Co., 287 F.3d 936, 951-52 (10th Cir. 2002). A courts may exclude specific opinions or bases for the expert's opinions that were not fairly disclosed in the expert's report. Keach v. United States Trust Co., 419 F.3d 626, 641 (7th Cir. 2005). The Tenth Circuit has identified four factors to determine whether a violation of Rule 26(a)(2) was harmless or justified: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Woodworker's Supply, Inc., v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)

The Tribe argues that it not necessary to reach defendants' argument concerning Rule 37(c), because Brown and Whitelaw were permitted to supplement their reports under Rule 26(e) and the supplemental reports do not constitute untimely expert disclosures under Rule 26(a)(2). Under Rule 26(e), a party is under a duty to supplement "in a timely manner if the party learns that in some

material respect the disclosure is incomplete or incorrect and if the additional and corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Although parties are permitted to supplement expert disclosures, Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." Leviton Mfg. Co., Inc. v. Nicor, Inc., 2007 WL 1306759 *4 (D.N.M. April 20, 2007) (quoting Beller v. United States, 221 F.R.D. 696, 701 (D.N.M. 2003)). As one court has noted:

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Cook v. Rockwell Int'l Corp., 2006 WL 3533049 *87 (D. Colo. Dec. 7, 2006) (citations omitted). Permitting late supplementation of expert reports also has the effect of denying the opposing party the opportunity to file a meaningful Daubert motion as to questionable expert testimony. See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Public Schools, 455 F. Supp. 2d 1286, 1299 (D.N.M. 2006).

Brown's new sampling was not a permissible basis to "supplement" his report under Rule 26. The Tribe argues that neither Brown nor Whitelaw altered his substantive analysis or reasoning, and defendants will not be prejudiced if the Tribe relies on the supplemental reports at trial. However, at the December 4, 2009 hearing before the magistrate judge, the parties agreed that the data and numbers that Whitelaw would use to calculate damages using an HEA model were a

significant source of dispute, and the parties would be presenting vastly different evidence concerning the proper calculation of damages. Dkt. # 708, at 31, 33. In fact, the Tribe represented to the magistrate judge that the key source of disagreement between the experts for the parties would be the values inputted into the HEA. Id. at 33. Brown's supplemental report contains new FQI values that change the outcome of Whitelaw's HEA calculation. Given the importance of Brown's FQI data, the Tribe cannot simply substitute new FQI numbers in the guise of supplementation of an expert report, because defendants must be given a reasonable opportunity for their own experts to assess the reliability of Brown's sampling and FQI. The plain language of Rule 26(e) states that supplementation should be permitted to notify the opposing party of an "incomplete or incorrect" disclosure. The supplemental reports of Brown and Whitelaw were not submitted to correct clerical errors or clarify an issue based on pre-existing data. Instead, the supplemental reports were intended to strengthen the opinions of another expert witness, Norman, and shield Norman's testimony from a possible Daubert challenge. Thus, Brown's and Whitelaw's new reports do not qualify as supplemental expert disclosures under Rule 26(e), and the Tribe must show that the untimely disclosure of these reports was harmless under Rule 37(c).

The Court must apply the four Woodworkers' Supply factors to determine if the Tribe's untimely disclosure of Brown's and Whitelaw's new reports is harmless or substantially justified under Rule 37(c). As to the first factor (prejudice), the Court finds that defendants will be prejudiced if the Tribe is permitted to rely on the untimely expert disclosures. Defendants did not receive Brown's new report until June 2, 2010 and they did not receive Whitelaw's new report until July 9, 2010. However, defendants had already taken Whitelaw's deposition when they received his new report and defendants had only eight days to review Brown's new report before his

deposition on June 10, 2010. In addition, defendants' expert reports were due on June 25, 2010, and defendants' experts had not even seen Whitelaw's new report at the time defendants were required to submit their expert reports. As to the second factor (cure), the Tribe offers no suggestions how the prejudice to defendants could be cured. Instead, the Tribe argues that the prejudice to defendants is "feigned" or illusory. Dkt. # 811, at 23-24. However, the Court has already determined that defendants were prejudiced by Tribe's late disclosure of expert reports, and the Tribe's failure to offer a meaningful way to cure the prejudice to defendants shows that the second Woodworkers' Supply factor supports the exclusion of the supplemental reports. Defendants argue that the third Woodworkers' Supply factor (disruption) also favors exclusion of the untimely reports, because defendants will need to re-depose Brown and Whitelaw and obtain their own updated expert reports unless Brown's and Whitelaw's new reports are excluded. Dkt. # 770, at 12. Trial is less than two months away and defendants should not be required to disrupt their pretrial preparation to re-depose Brown or Whitelaw. The third Woodworkers' Supply factor supports defendants' argument that untimely expert reports should be excluded.

As to the fourth Woodworkers' Supply factor (bad faith or willfulness), there is an appearance that the Tribe made untimely expert disclosures in bad faith when it knew well in advance that Brown and Whitelaw would be providing new reports and failed to notify defendants or seek leave of court to submit expert reports out of time. The Tribe asked defendants to move Brown's deposition from April 21 to June 10, 2010 due to medical reasons, but Brown used this additional time to conduct new sampling and draft a new expert report. The Court notes that the magistrate judge rejected the Tribe's request for a deadline to submit rebuttal reports, but the Tribe submitted new reports for Brown and Whitelaw in an attempt to bolster Norman's proposed expert

9

testimony against challenges from defense counsel. This calls into question whether the Tribe was using "supplemental" expert reports to perform the same function as the disallowed rebuttal reports. Finally, the transcript of the December 4, 2009 hearing before the magistrate judge shows that the Tribe affirmatively represented that it had completed its sampling, and it argued that BNSF should have completed its sampling well before December 2009. This shows that defendants had no reason to anticipate that the Tribe would conduct new sampling, and suggests that the Tribe's representations to the magistrate judge were not made in good faith.

Considering all four Woodworkers' Supply factors, the Court finds that Brown's and Whitelaw's "supplemental" reports should be excluded to prevent prejudice to defendants. The Tribe argues that exclusion of expert testimony is an extreme sanction that should not be used unless defendants can show a real and substantial risk of prejudice at trial. Dkt. # 811, at 24. However, the Tribe is the party that has violated Rule 26, and it is the Tribe's burden to show that its untimely disclosure of new expert testimony is harmless or substantially justified. See R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 272 (6th Cir. 2010); Aumand v. Dartmouth Hitchcock Medical Center, 611 F. Supp. 2d. 78, 90 (D.N.H. 2009); Palmer v. Rhodes Machinery, 187 F.R.D. 653, 655 (N.D. Okla. 1999). The Tribe also overstates the harm to its case from exclusion of Brown's and Whitelaw's new reports, because the Tribe may still rely on the expert opinions stated in Brown's and Whitelaw's initial reports, subject to the Daubert rulings. The expert disclosure requirements of Rule 26 are clear and a "litigant who fails to comply with these requirements does so at his own peril." Cohlmia v. Ardent Health Services, LLC, 254 F.R.D. 426, 429 (N.D. Okla. 2008). The Tribe knew that it was submitting untimely expert reports with new data that would substantially increase its claim for NRD. Based on the Tribe's affirmative representations that its sampling was complete,

there was no reason for defendants to anticipate that the Tribe would conduct new sampling so late in the case. The prejudice to defendants from the late disclosure of expert testimony and the Tribe's failure to mitigate this prejudice strongly support the exclusion of Brown's and Whitelaw's "supplemental" reports.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike the Untimely, "Supplemental" Expert Reports of John Brown and Edward Whitelaw and Brief in Support (Dkt. # 770) is **granted**, and Brown's and Whitelaw's "supplemental" reports will be excluded.

**DATED** this 29th day of September, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT